# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

SKIP MANSKER,                          No. CIV S-09-3011-FCD-CMK-P

      Plaintiff,

    vs.                          <u>FINDINGS AND RECOMMENDATIONS</u>

McKINZY, et al.,

      Defendants.

_____/

      Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is plaintiff's complaint (Doc. 1).

      The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  <u>See</u> 28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief.  <u>See</u> 28 U.S.C. § 1915A(b)(1), (2).  Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This means that claims must be stated simply, concisely, and directly.  <u>See</u> <u>McHenry v. Renne</u>, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  <u>See</u> <u>Kimes v. Stone</u>, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because plaintiff must

allege with at least some degree of particularity overt acts by specific defendants which support

the claims, vague and conclusory allegations fail to satisfy this standard. Additionally, it is

impossible for the court to conduct the screening required by law when the allegations are vague

and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff names the following as defendants: McKinzy, Ndugbu, McCue, Jackson, Bruce, McDonald, and Grannis. Plaintiff claims that he was not allowed out of his cell on July 7, 2008, to attend scheduled Wiccan religious services. According to plaintiff, this occurred again at the next scheduled Wiccan services on July 14, 2008, and July 21, 2008. Plaintiff eventually was able to go to the chapel and was informed that Wiccan services had been cancelled and that the Catholic chaplain – defendant Ndugbu – could "conduct Catholic confession." Plaintiff was then threatened by defendant McKinzy with disciplinary action if he did not leave the chapel immediately. According to plaintiff, the next scheduled Wiccan service – July 28, 2008 – was also cancelled. Plaintiff states that Wiccan services were scheduled for August 25, 2008, but that such services were cancelled "because Christian services were held in place of the scheduled Wiccan services, per Chaplain Ndugbu."

Plaintiff states that, during the course of the grievance process, he was interviewed by defendant McCue, who "showed complete indifference to plaintiff's Appeal issues, and subsequently denied the appeal." Plaintiff claims that he was denied access to Wiccan services again on October 13, 2008, and October 20, 2008. According to plaintiff, he had a meeting with another chaplain – defendant Jackson – who also "showed indifference." Plaintiff states that he was thereafter denied access to Wiccan services and that his appeal was denied at the second level by defendant McDonald. Plaintiff adds that he was able to attend Wiccan services on December 15, 22, and 19, 2008, but denied access in March 2009 following denial of his grievance at the final level by defendant Grannis.

1    Plaintiff asserts that these facts give rise to a § 1983 claim based on violation of

2   his right to freedom of religion under the First Amendment.  Plaintiff seeks monetary damages

3   and injunctive relief.

4

5                              **II.  DISCUSSION**

6        The United States Supreme Court has held that prisoners retain their First

7   Amendment rights, including the right to free exercise of religion.  See O'Lone v. Estate of

8   Shabazz, 482 U.S. 342, 348 (1987); see also Pell v. Procunier, 417 U.S. 817, 822 (1974).  Thus,

9   for example, prisoners have a right to be provided with food sufficient to sustain them in good

10  health and which satisfies the dietary laws of their religion.  See McElyea v. Babbit, 833 F.2d

11  196, 198 (9th Cir. 1987).  In addition, prison officials are required to provide prisoners facilities

12  where they can worship and access to clergy or spiritual leaders.  See Glittlemacker v. Prasse,

13  428 F.2d 1, 4 (3rd Cir. 1970).  Officials are not, however, required to supply clergy at state

14  expense.  See id.  Inmates also must be given a "reasonable opportunity" to pursue their faith

15  comparable to that afforded fellow prisoners who adhere to conventional religious precepts. See

16  Cruz v. Beto, 405 U.S. 319, 322 (1972).

17       However, the court has also recognized that limitations on a prisoner's free

18  exercise rights arise from both the fact of incarceration and valid penological objectives.  See

19  McElyea, 833 F.2d at 197.  For instance, under the First Amendment, the penological interest in

20  a simplified food service has been held sufficient to allow a prison to provide orthodox Jewish

21  inmates with a pork-free diet instead of a completely kosher diet.  See Ward v. Walsh, 1 F.3d

22  873, 877-79 (9th Cir. 1993).  Similarly, prison officials have a legitimate penological interest in

23  getting inmates to their work and educational assignments.  See Mayweathers v. Newland, 258

24  F.3d 930, 38 (9th Cir. 2001) (analyzing Muslim inmates' First Amendment challenge to prison

25  work rule).

26       While free exercise of religion claims originally arose under the First

Amendment, Congress has enacted various statutes in an effort to provide prisoners with heightened religious protection. <u>See</u> <u>Warsoldier v. Woodford</u>, 418 F.3d 989, 994 (9th Cir. 2005). Prior to these congressional efforts, prison free exercise claims were analyzed under the "reasonableness test" set forth in <u>Turner v. Safley</u>, 482 U.S. 78, 89-91 (1987); <u>see e.g.</u> <u>O'Lone</u>, 382 U.S. at 349. The first effort to provide heightened protection was the Religious Freedom Restoration Act ("RFRA") of 1993. However, the Supreme Court invalidated that act and restored the "reasonableness test." <u>See</u> <u>City of Boerne v. P.F. Flores</u>, 521 U.S. 507 (1997); <u>see also</u> <u>Freeman v. Arpaio</u>, 125 F.3d 732, 736 (9th Cir. 1997) (recognizing that the United States Supreme Court's decision in <u>City of Boerne</u> invalidated RFRA and restored the "reasonableness test" as the applicable standard in free exercise challenges brought by prison inmates).

Congress then enacted the Religious Land Use and Institutionalized Persons Act ("RLUIPA") in 2000 ". . . in response to the constitutional flaws with RFRA identified in <u>City of Boerne</u>." <u>Guru Nanak Sikh Soc. of Yuba City v. County of Sutter</u>, 456 F.3d 978, 985 (9th Cir. 2006). Under RLUIPA, prison officials are prohibited from imposing "substantial burdens" on religious exercise unless there exists a compelling governmental interest and the burden is the least restrictive means of satisfying that interest. <u>See</u> <u>id.</u> at 986. RLUIPA has been upheld by the Supreme Court, which held that RLUIPA's "institutionalized-persons provision was compatible with the Court's Establishment Clause jurisprudence and concluded that RLUIPA 'alleviates exceptional government-created burdens on private religious exercise.'" <u>Warsoldier</u>, 418 F.3d at 994 (quoting <u>Cutter v. Wilkinson</u>, 125 S.Ct. 2113, 2117 (2005)). Congress achieved this goal by replacing the "reasonableness test" articulated in <u>Turner</u> with the "compelling government interest" test codified in RLUIPA at 42 U.S.C. § 2000cc-1(a). <u>See</u> <u>id.</u>

It is not clear whether a prisoner must specifically raise RLUIPA in order to have his claim analyzed under the statute's heightened standard. In <u>Alvarez v. Hill</u>, the Ninth Circuit held that, if a complaint contains "factual allegations establishing a 'plausible' entitlement to relief under RLUIPA, [plaintiff has] satisfied the minimal notice pleading requirements of Rule 8

1 of the Federal Rules of Civil Procedure." 518 F.3d 1152, 1157 (9th Cir. 2008); but see

2 Henderson v. Terhune, 379 F.3d 709, 715 n.1 (9th Cir. 2004) (declining to express any opinion

3 about whether plaintiff could prevail under RLUIPA because plaintiff brought his claim under

4 the First Amendment only). Therefore, it is possible for a prisoner's complaint to raise both a

5 First Amendment claim and RLUIPA claim based on the same factual allegations. In other

6 words, even if the plaintiff does not specifically invoke the heightened protections of RLUIPA,

7 he may nonetheless be entitled to them. Under Henderson, however, the plaintiff's claim may be

8 limited to the less stringent Turner "reasonableness test" if the plaintiff specifically brings the

9 claim under the First Amendment only.

10 Under both the First Amendment and RLUIPA, the prisoner bears the initial

11 burden of establishing that the defendants substantially burdened the practice of his religion by

12 preventing him from engaging in conduct mandated by his faith. See Freeman v. Arpaio,125

13 F.3d 732, 736 (9th Cir. 1997) (analyzing claim under First Amendment); see also Warsoldier,

14 418 F.3d at 994-95 (analyzing claim under RLUIPA). While RLUIPA does not define what

15 constitutes a "substantial burden," pre-RLUIPA cases are instructive. See id. at 995 (discussing

16 cases defining "substantial burden" in the First Amendment context). To show a substantial

17 burden on the practice of religion, the prisoner must demonstrate that prison officials' conduct

18 ". . . burdens the adherent's practice of his or her religion by pressuring him or her to commit an

19 act forbidden by the religion or by preventing him or her from engaging in conduct or having a

20 religious experience which the faith mandates." Graham v. Commissioner, 822 F.2d 844, 850-51

21 (9th Cir. 1987). The burden must be more than a mere inconvenience. See id. at 851. In the

22 context of claims based on religious diets, a plaintiff must prove that prison officials refused to

23 provide a diet which satisfies his religious dietary laws or that the available prison menu

24 prevented him from adhering to the religious dietary laws mandated by his faith. See Bryant v.

25 Gomez, 46 F.3d 948, 949 (9th Cir. 1995).

26 In this case, plaintiff alleges that he was prevented from attending Wiccan

1  services on several occasions in July 2008, August 2008, October 2008 and March 2009.  He

2  states that he was able to attend services in December 2008.  The court finds that these

3  allegations do not suggest a substantial burden because plaintiff does not allege that his faith

4  mandated regular attendance at Wiccan services.  Given the relatively few occasions when

5  plaintiff was not able to attend services, and given that plaintiff was able to attend services in

6  December 2008, plaintiff's allegations establish, at best, an inconvenience to the practice of

7  plaintiff's religion that does not rise to the level of either a constitutional or statutory violation.

8

9                              **III.  CONCLUSION**

10         Because it does not appear possible that the deficiencies identified herein can be

11  cured by amending the complaint, plaintiff is not entitled to leave to amend prior to dismissal of

12  the entire action.  See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).

13         Based on the foregoing, the undersigned recommends that this action be dismissed.

14         These findings and recommendations are submitted to the United States District

15  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 21 days

16  after being served with these findings and recommendations, any party may file written objections

17  with the court.  The document should be captioned "Objections to Magistrate Judge's Findings

18  and Recommendations."  Failure to file objections within the specified time may waive the right

19  to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

20

21   DATED: May 6, 2010

22

23                              CRAIG M. KELLISON
                               UNITED STATES MAGISTRATE JUDGE

24

25

26